UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MIGUEL GONZALEZ | Crim. Action No.: 12-cr-00196 (PGS)<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on a motion by Defendant Miguel Gonzalez ("Defendant" or "Mr. Gonzalez") to withdraw his guilty plea to a one count information charging him with possession of child pornography. (ECF 21). Defendant argues that the motion to withdraw should be granted because (1) the Court and defense counsel were unaware Defendant was under a disability at the time of the plea, and therefore lacked capacity, thereby raising substantial questions as to whether defendant's due process and Sixth Amendment rights were adequately safeguarded; and (2) the plea not entered voluntarily.

I.

According to the information, an investigator of the Department of Homeland Security ("DOHS") accessed a P2P (person-to-person) network, and discovered that Defendant had been downloading child pornography. A search warrant was obtained, and, in executing same, DOHS investigators browsed Defendant's shared directories and observed the proscribed images. On or about August 23, 2011, the criminal complaint was filed charging Gonzalez with one count of knowing possession of child pornography.

On March 21, 2012, Defendant plead guilty to the single charge. At the plea hearing, the Court engaged in the requisite colloquy, and reviewed with Defendant the usual questions concerning

1

competency and the waiving of his constitutional rights by entering into a plea agreement. At the plea hearing, Mr. Gonzalez stated on the record that he could "only read up to three level" (Plea Hearing Transcript "PT" at 4:34), but that he could understand the ongoing discussion. On May 31, 2012, a final presentence report ("Report") was received by Lisa Van Hoeck ("Ms. Van Hoeck"), Federal Public Defender. As per her practice, Ms. Van Hoeck met with Mr. Gonzalez to discuss the Report. At that time, Ms. Van Hoeck observed that the Defendant was having difficulty understanding the circumstances and consequences of the Report. As a result, Ms.Van Hoeck sent a letter to Mark Siegert, Ph.D ("Dr. Siegert"), requesting that he evaluate Mr. Gonzalez due to the seemingly poor intellectual functioning he exhibited at their meeting. As a result, on March 4, 2014, the Court held a hearing to address the competency of Mr. Gonzalez to have entered the guilty plea. At that hearing, Dr. Siegert testified on behalf of Defendant, and Steven Simring, M.D. ("Dr. Simring") testified on behalf of the government.

During a plea hearing, the Court conducted the requisite colloquy, and asked Defendant the standard questions concerning the waiver of certain constitutional rights. (*Id.* 5:4-13:6). Notably, Drs. Siegert and Simring ultimately disagreed on the question of Mr. Gonzalez's competency at the time he entered his plea of guilty; but both experts tended to agree that the term "waiver" is a difficult word for a person like Mr. Gonzalez who has a low reading level to understand; and they opined that Mr. Gonzalez could not adequately understand its meaning and implications. Indeed, the Court is aware that at one point during the plea hearing colloquy Mr. Gonzalez hesitated, and appeared to have not fully comprehended the meaning of the word "waiver." (*Id.* at 6:11-20). The Court allowed Mr. Gonzalez's attorney to discuss the question with him, and then moved forward with the hearing based on the understanding that the issue had been resolved as between counsel and Mr. Gonzalez. (*Id.* at 6:21-7:18). Thereafter, Defendant "waived" the reading of the information (*Id.* at 7:19-8:2), his right not to incriminate himself (*Id.* at 9:8-14), his right to a jury trial (*Id.* at 9:20-10:3), the ability to call

2

defense witnesses (*Id.* at 12:5-10), his right to contest any statements given to law enforcement officials (*Id.* at 12:17-24). Moreover, Defendant also waived his right to appeal or challenge the sentence (*Id.* at 25:7-27:1).

II.

Evaluation of Defendant by Mark Siegert, Ph.D

Dr. Siegert interviewed and tested Mr. Gonzalez during a psychological examination on October 19, 2012. In conducting his evaluation, Dr. Siegert administered the Wechsler Individual Achievement Test (Competency Hearing Transcript ("CT") at 21:19-25), and relied upon Defendant's performance under this test, as well as the Wexler Adult Intelligence Scale (*Id.* at 21:13-16), and the Diagnostic & Statistical Manual of Mental Disorders (*Id.* at 10:4-5), in making his diagnosis. The latter is a treatise that provides guidelines for the diagnosis of mental disorders through the use of five so-called axes, of which Dr. Siegert made findings in four with respect to Mr. Gonzalez.

Dr. Siegert's Axis 1 diagnosis of Mr. Gonzalez was that he suffered from a cognitive disorder of a non-specific nature (*Id.* at 12:22-25). That is, "the concreteness of Mr. Gonzalez thinking or the literalness of his thinking impaired his ability to understand basic information in an adequate manner." (*Id.* at 13:5-11). Under Axis II, Dr. Siegert found that Mr. Gonzalez "had borderline intellectual function, and . . . his verbal comprehension index was in the mid-range of mental retardation." (*Id.* at 13:18-21). Axis IV identifies psychological stressors. Dr. Siegert testified that the main source of stress for Mr. Gonzalez consisted of dealing with "problems with the legal system related to this case." (*Id.* at 14:5-8). Axis V concerns "global assessment of functioning" ("GAF"). Dr. Siegert found that Gonzalez's GAF was 51, indicating that he has "moderate difficulties in living in the social and occupational realm." (*Id.* at 14, 9-18). Dr. Siegert summarized his diagnosis as follows:

> The problems we really have, Axis I and 2 really go together, which is we have a man who has a long history of extreme problems in thinking, being very concrete; extreme problems in understanding, especially

3

> language; verbal; written's essentially non-existent. So, the limited
> intellect which adds to the cognitive disorders, especially the deficit in
> his verbal comprehension skills, really capture what I believe is
> important for my opinion.

(*Id.* 15, 3-10). Dr. Siegert interviewed Mr. Gonzalez to assess his knowledge of the judiciary and criminal proceedings. He found that Gonzalez "understand[s] a very important function [sentencing] of a judge." (*Id.* at 46:7-14); but he did not know the responsibilities of the prosecutor (*Id.* at 46:23-25), or the role of the public defender (*Id.* at 49:9-16). Following his evaluation, Dr. Siegert found that Gonzalez lacked competency. Dr. Siegert opined that the use of the word "waiver" during the guilty plea hearing without providing an explanation or definition of its meaning was beyond Gonzalez's comprehension.

<u>Evaluation of Defendant by Steven Simring, M.D</u>

Dr. Simring also examined Defendant, and rendered an opinion concerning his competency. Unlike Dr. Siegel, Dr. Simring's focus avoided psychological tests, but rather he based his opinion on a clinical interview, and his review of the discovery, which included Dr. Watt's report and Dr. Siegert's testing. (*Id.* at 109:15-110:4).

Dr. Simring testified that his style of examination tends to be more focused on the actual facts of the case, rather than psychological tests, but he supplements his interview with psychological testing when necessary. (*Id.* at 112:4-6). As such, Dr. Simring measured functional intelligence not only by testing, but by evaluating Defendant's other real-life functions. Such functions included Gonzalez's ability to hold a job, to function in the community, to maintain a family, to operate a car, to operate and understand the basics of a computer, and to operate heavy machinery. According to Dr. Simring, all of these factors support a finding that Defendant has the capacity to function in the normal world because he can deal effectively with jobs, bosses, payroll, taxes and everyday matters that adults typically encounter on a day-to-day basis. (*Id.* at 118, 8-15).

Dr. Simring testified that from his meetings with Gonzalez, he thought Gonzalez was competent. Dr. Simring stated that "it was my conclusion that he was able to understand the nature and consequences of the proceedings, the plea, and he was able to assist properly in his defense. And therefore, he was competent to enter a plea and to be sentenced." (ET 141, 21-25). Dr. Simring then explained that the test results of Dr. Siegert do not alter his opinion that Gonzalez is competent:

> A borderline intellectual functioning is very common within the population, it is certainly not dispositive. Where there is any intellectual or psychiatric problem that forms a proper ground on which to do a further investigation on competency, which is normally presumed in most criminal defendants. And it's reasonable where the question is raised to do a further investigation, notwithstanding the assertion of his previous attorney that he was competent, notwithstanding the plea hearing before, it is always reasonable to re-examine competency when a serious question is raised. So not with -- taking into account all of the facts, the IQ, the wide-range achievement, his jobs, his abilities, his computer, all the other things I've testified to and Dr. Siegert has, it is my opinion that he has borderline intellectual functioning. However, he has other assets, he's held a job for many years in the real world, he's raised a family, he operates a computer and a motor vehicle.

### III.

After reviewing the testimonies of both Dr. Siegert and Dr. Simring, the Court concludes that the findings of Dr. Simring's opinion are most credible. That is, the Court recognizes that Simring's methodology that considers all of the facts and the larger context, rather than one focusing on the administration of select psychological tests, yields a competency evaluation that is more reliable, and, accordingly, more credible. The fact that Gonzalez maintained employment for some years, raises a child, operates heavy machinery, works as an auto mechanic, and drives an automobile demonstrates maturity and competency of intellectual functioning.

In addition, when Dr. Simring interviewed Gonzalez about the nature of a criminal proceeding, Dr. Simring's testimony was far different than Dr. Siegert's version within that area. For example, when interviewed by Dr. Simring, Gonzalez knew of the role of the jury (*Id.* at 143:13-14), was aware that he

was charged with downloading child pornography (*Id.* at 122:24-123:7), and he had both a basic understanding of the purpose of a plea bargain (ET 124, 20 through ET 125, 13), and a familiarity with the role of a judge (*Id.* at 125:15-25). In contrast, when Dr. Siegert reviewed the nature of a criminal proceeding, Gonzalez's testimony was more sketchy.

Although the Court finds Dr. Simring's testimony to be the most credible, and that Mr. Gonzalez is competent to stand trial and enter a plea of guilty, the court cannot overlook the fact that the defendant did not understand the word "waiver." Both psychologists suggested that more elementary words should replace waiver, like "giving up a right." As such, the Court grants the motion to vacate the plea of guilty due to the many times the Court used that word "waiver" during its colloquy with Defendant. The Court finds that the failure to describe the term "waiver" in a more understandable manner is a fair and just reason for requesting the withdrawal. *See* FED. R. CR. P. 11(d)(2)(B).

## ORDER

This matter having come before the court on a motion by Defendant Miguel Gonzalez to withdraw his guilty plea to a one count information charging him with possession of child pornography (ECF 21), and the Court having considered the parties' submissions and the testimony of Drs. Siegert and Simring furnished at the March 4, 2014 hearing, and for good cause shown;

IT IS on this 16th day of October, 2014,

ORDERED that Defendant Miguel Gonzalez's motion is hereby GRANTED.

_____
PETER G. SHERIDAN, U.S.D.J.